## CLARK v. ANTHIS et al.
### No. 391.

Circuit Court of Appeals, Tenth Circuit.
June 27, 1931.

J. S. Severson, of Tulsa, Okl., for appellant.

J. D. Simms, of Wewoka, Okl., and John M. Holmes, of St. Louis, Mo. (Thrift & Davenport, of Sapulpa, Okl., and Thompson, Mitchell, Thompson & Young and Joe T. Dickerson, all of St. Louis, Mo., on the brief), for appellees.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

Fill Clark is a Creek Freedman, born September 22, 1904, and was the allottee of the lands in controversy; he brings this action to recover the allotment, to set aside all conveyances thereof, and for an accounting. The defendants claim under a deed made by Clark's guardian in 1916, and under a quitclaim deed made by Clark after his majority. The plaintiff claims that the guardian's deed is void because of a defect in the service of the notice of the petition to sell upon his next of kin; because of a defect in the publication of the notice of public sale; and because he was not personally examined at the hearing on the petition to sell, as required by Rule 5 of the Supreme Court of Oklahoma. The plaintiff claims his quitclaim deed was procured by undue influence, in that he was not advised of the fact that the guardian's deed was void, and for other reasons.

The trial developed that the legal guardian of Clark filed a sufficient petition to sell his real estate in a court of competent jurisdiction; that the land was sold at public sale, and the sale confirmed. The decree of sale recites that it was made "upon due examination and consideration of said petition and after a full hearing upon the same and upon due consideration of the proofs offered in said matter." The record discloses service by publication on the next of kin; it does not disclose personal service, as then required by the Oklahoma statute (C. O. S. 1921, § 1472), although the order directed that such personal service be had. Except as quoted above, the record of the probate proceedings is silent as to the examination of the minor at the hearing, although at the trial of this case, Clark and his mother testified they were not present. As to the quitclaim deed, Clark testified that after he became of age, he gave a lawyer a contract for half of the allotment if the lawyer could get his land back; the lawyer later told him "he couldn't do me no good." Clark's uncle, a witness for Clark, testified that "that was sometime before the boy was grown, and I told him may be when he got grown he could get some more money out of it, may be Mr. Anthis might pay him some more money, as he only had realized so much out of it. * * * but anyhow finally we went up there to Mr. Anthis' office, and we went in and explained it to him; he wanted to make a deal with him some way to get some money out of it, I haven't never realized much out of it."

In response to these advancements, Clark was paid $25 for his quitclaim deed.

The trial court denied the plaintiff relief, and we think rightly. All of the objections here made to the guardian's deed were considered by this court in Weston v. Poland, 48. F. (2d) 738, and held to be without merit. The leading Oklahoma cases from Eaves v. Mullen, 25 Okl. 679, 107 P. 433, decided in 1910, to Dill v. Stevens, 141 Okl. 24, 284 P. 60, rehearing denied in 1930, were cited and followed. The case of Rock Island Implement Co. v. Pearsey, 133 Okl. 1, 270 P. 846, decided in October, 1928, now relied on by appellant, was considered, and the conclusion reached that if it did come to a conclusion contrary to the otherwise unbroken current of Oklahoma decisions, that it was a stray. In any event, the rule was announced, fortified by controlling authority, and followed, that when the federal courts are dealing with local law, "a settled construction of a statute when titles are acquired becomes a rule of property and protects a purchaser." Rule 5 was considered, and the case of Manuel v. Kidd, 126 Okl. 71, 258 P. 732, 739, was cited and followed. In that case the record of a probate sale did not affirmatively disclose that the minor had been personally examined as required by this rule. The guardian's deed was collaterally attacked, and at the trial the minor and his mother testified that the rule was not complied with. The Supreme Court of Oklahoma declined to permit the decree of sale to be avoided by a collateral attack sustained by such testimony, and said: "Where particular facts must be proved in order to confer jurisdiction upon a court to enter judgment, the presumption arises when the validity of the judgment is attacked that such facts were proved." In support of this statement, the Supreme Court cited 15

R. C. L. page 878, which states the rule to be that, when a court of competent jurisdiction has rendered judgment in a case where facts were required to be proved to confer jurisdiction, there is a presumption that such facts were duly proved, although the record' is silent upon the matter, and that the judgment is not subject to collateral attack, unless the record affirmatively discloses that there was no proof of such jurisdictional facts.

The guardian's deed being impervious to collateral attack, it is unnecessary to deal with the deed executed by Clark after his majority, except to say that the trial court was correct in holding that the evidence fell far short of that necessary to justify a court in setting aside a conveyance executed by one competent to contract.

The judgment of the trial court is affirmed.